for the Court is 1-81926 Callaway Manor Apartments v. United States, an appeal from the Decision of the Court of Federal Claims. Mr. Biondo, you want five minutes for rebuttal? Yes, Your Honor. Okay. You can wait until you're ready. Are you ready? Yes, Your Honor. Okay. I didn't mean to rush you. I was just trying to figure out. Not at all. All right. You may begin. May it please the Court, my name is Mark Blando from acronym Blando. With me is co-counsel Bill Roberts from Fabry-Baker Daniels, and also my client Lindsay Rupp is here today. The issue before the Court today is whether the four partnerships, who are the appellants in this matter, forfeited or released their accrued claims for breach of contract when they conveyed their properties to the government. Do you agree that the three contemporaneously signed documents should be read together? Not at all, Your Honor. I mean, I understand why you argue that the offer should be separately, the offer to convey should be separately construed, but you're saying the other three shouldn't, even though they were simultaneously? No, the rule that the lower court and the government relies on basically says if you have a group of documents, they can be read together as far as let's say there's a similar term that's used in all three. That term should have the same meaning in all of them, but here they're trying to flip that rule on its head and basically say when you refer to one document, you're necessarily referring to all of the related documents. That just can't be the right rule of contract interpretation. How else could a party refer to only one contract when that's their intention? The parties chose to refer only to the mortgage, which is the security instrument. But weren't they collectively defined as the loan obligations? Yes, and that's the term that the parties could have used in this standard form contract, but they didn't. They did not use the term loan obligations. They used the term security instrument, and we have to give meaning to the words that the parties chose. There's a reason that the offer to convey here refers only to the mortgage, because that is the document that covered the property that was being conveyed. Again, if they wanted to convey or refer to all three of those documents, all they had to do was refer to all three of them. I mean, if you look at the loan agreement itself, it's got a very helpful guide up front that talks about the three different instruments. That's at Appendix 32. Also, if you look at the regulations, the definition section, they talk about all three of these documents separately. The agency knows what each of these three documents are. They're all defined and delineated very separately, and so if they meant to refer to all three, that's the terminology they would have and should have used. So we have to give, of course, the basic rule of contract interpretation, give meaning to the words the parties used. The parties used the word security instrument, which there's no dispute, refers only to the mortgage, and so we have to enforce that intent. The offer to convey security uses the language security instruments, as described in security instruments. What are the security instruments? There's no dispute that the security instruments... There's only one. There's only one, right. In some cases, there's more than one mortgage. In some states, it's a mortgage. Other states, it's a deed of trust. That's also clear from the 3560 regulations that define all of these terms, but there's no dispute here that security instrument means mortgage, so you can read that word as mortgage. So to be specific, what the offer to convey is is all of the rights, title, and interest in the contract rights that are described in the mortgage. So really, the question is what contract rights are we talking about that are described in the mortgage? Where are you reading from when you say all contract rights in the mortgage? That's in the offer to convey security, Appendix 90, the key clause at issue. I'm using the word mortgage for security instrument for, of course, convenience. Right, so you're substituting in the word mortgage, not... Correct. It's not in the document. Correct, yes, because that is the security instrument. Again, there's no debate between the parties or with the court below that security instrument, and again, consistent with the regulations, the Black's Law Dictionary of Security Instrument. I mean, you can look right in the agency's definitions at 3560 that talk about the mortgage or deed of trust as a security instrument. The mortgage did incorporate the loan agreement, but not the mortgage. I mean, not the promissory note, let alone the prepayment right that was included in that note, let alone any claim that may have come along with that prepayment right. So you can see there's several layers of remoteness that you have to go through. If you're Mr. Rupp, as a person signing this document and looking at, okay, what are my rights in my contract rights that are described in the mortgage, it wouldn't be reasonable for him to conclude, he certainly wouldn't be on notice, that he's giving up that right. Another important point in that regard is under the restatement... Look at all the contemporaneous circumstances that surround the offer to convey security. I mean, you satisfied all the statutory requirements, but you still opted not to prepay the loans. That's not necessarily true, Your Honor. A number of issues there. First of all, we requested to prepay in 2008, and the record is clear that the partnerships did want to get out. They did want to exercise that right to tap into the market value of their properties and bring them to market, and they made the request in 2008. By the time they got to the end of the process, it was about three years later, and a lot happened in that interim, including the fact that Mr. Rupp was diagnosed with and later... Sure, but when you ask to prepay and the government refused to let you, that was a breach. It was a breach. At that time, you had the right to file a breach action. And we did file a breach action, Your Honor. That's why we're here today, and we filed that breach action promptly, certainly within the six-year statute of limitations. We also filed... You didn't file it right after the breach. No, we had a six-year statute of limitations, and we used it. Again, a lot happened in that interim, including Mr. Rupp's... In the interim, you negotiated with the promissory loan and all of that by just turning over this property rather than them foreclosing on you. Yes, they threatened foreclosure so that the partnerships did not have a lot of other choices, but that doesn't mean that they gave up their right to sue. They enforced their right to sue by bringing this very lawsuit, and they did so within a couple years. Let me ask you this. Hypothetically, if we disagree with you on your view that the promissory loan, the mortgage agreement, and the... What's the other? The note. The promissory note, yes. All three of these, if we think these are all part and parcel of the same contractual obligations between you and the government on this case, why then doesn't the really broad reference in the case, particularly given this context where the property was in trouble, you were at risk of foreclosure, and you just wanted to turn it all over to the government, suggest that you were releasing everything to the government in exchange for forgiving your debt? Why isn't that the best rating of that assignment clause? For several reasons, Your Honor. First of all, because there is no reference to the claim, and under Ginsburg, you do need at least some kind of express or implied designation of a claim. Well, I know you... So is Ginsburg your best case? It's Ginsburg and the common law principle that it espouses. Ginsburg is not such an all-encompassing, all-inclusive release. Ginsburg is an assignment from one private party to the other, turning over leases and the government. It doesn't say anything. It doesn't have this all-inclusive clause that you have in your assignment, and it's a different situation also, because you're turning your property over to the government. They're turning their property over to another private company. It doesn't... Those clauses, to me, I don't see how the clause in Ginsburg helps you at all. I mean, even beyond that, Ginsburg has a time limitation that the clause, the lease is turned over as of this date hereup, which suggests that you're not turning over your right to rent previously. There's no such time limitation in this assignment that assigns all of your rights, title, and interest in all contract rights. Your Honor, the language is actually strikingly similar, and if anything, the language is more broad in Ginsburg. In Ginsburg, they are assigning all of its right, title, and interests in the tenant leases, which is the contract being assigned. From and after the date hereup. Sure. There's a time limit, but that... The question is for the... There's a time limit in yours. We don't need a time limit, Your Honor. The question is whether the claim... If the rule... If this is a completely broad release, and we read this as releasing everything, and what you're trying to say is, well, this only applies to obligations or rights that arose after this assignment, then you need some kind of time limitation. Well, we're only looking at an assignment of the question of whether the already accrued claim had been assigned. So as far as the time limit, we're only talking about their already accrued claim, and as we discussed as notes... So that's a breach of contract claim, right? Yes. So that's a contract right. That's based upon a contract right. Well, it is one of the rights in a contract, as the restatement said, but that's a very... That's one of the most basic rules of the restatement, that if you're a party to a contract, you have the right to enforce it if the other side doesn't perform. Sure, but if you agree in an assignment... But the separate question is whether that right is... ...include a breach of contract claim. Because under Ginsberg... No, but... And Dominion. Ginsberg is a time-limited case. It has a time limitation that goes from the date of the transfer. Yours doesn't. I don't find Ginsberg useful. If you want to keep relying on it, it's fine, but answer my question. This says all. It doesn't qualify it. It doesn't set aside anything else. It says all contract rights. Why doesn't that release to the government the breach of contract claim? Because under Dominion and Ginsberg, you need at least an implied designation of the claim. That's the principle that both Ginsberg and Dominion recognize under the common law, that in order to... Because a claim is different. It's a chosen action. You need some kind of express or implied designation of the claim. A claim is different from all other kind of assets you might be turning over? It is different. Why? Because it's a chosen action. It's more akin to a personal right. And that's what, if you read the Sprint case from the U.S. Supreme Court, it has a long history about that. But the bottom line is Dominion, in applying Ginsberg, recognizes that you do at least need that implied designation. And again, back to the language, both Ginsberg and our case talk about all rights, title, and interest, except that Ginsberg, again, is actually broader because it's all rights, title, and interest in the underlying contract, whereas ours is all rights, title, and interest in certain contracts that are described. And one thing I definitely want to, as I go into my rebuttal time, point out in terms of what contract rights are described in the mortgage, I think it's very helpful to compare the offer to convey with... These three documents should be read separately, and that we should confine ourselves to the mortgage, right? When you're saying the contract rights are described specifically in the mortgage document? No, I mean, certainly that point still remains. You have to give meaning to... I don't know how else a party can refer only to the security instrument if their intent is to refer only to the security instrument. That's the language that they use. But what I wanted to point out is if you compare the contract rights that are described in that section four of the offer to convey to the mortgage document itself, which is the reference security agreement, that there's all of the interest line up. The government... Let's remember what the purpose of this agreement is. The government is acquiring the property, so they want to make sure that they get everything that goes along with the property, including any attachments to the property, any improvements, as well as any income or any contract-related rights stemming from that property. Does it apply to accrued income? Sorry, Your Honor? Does it apply to accrued income? Like Ginsberg? Sure. Would you have a claim? It's whatever claims that assigner has. Well, how do we know that you assigned past-due rent rather than just future-due rent? We assigned everything we had related to the property at the time of the assignment, but we did not assign the accrued claim because there's simply no language designating that claim. I also want to briefly mention, if we're talking about the... That's only if we read these documents separately. If we read them all as part and parcel of the same contractual obligation and you assigned all contract rights, then you assigned it. No, Your Honor, because you still need something that tells the parties there's a claim. I think one thing that distinguishes Dominion and all these other cases is there was no dispute that the parties to the assignment intended to assign the contract right. And under the restatement, I believe it's Section 246, it's the assigner's intention that matters. The question is, did the assignor intend to assign that right? And there's absolutely nothing here to indicate that Mr. Rupp intended to assign that right. Just very briefly on the facts, I want to point out, if we're talking about the facts at all, the government points to the circumstances only because I think they realize there's nothing in the language that actually points to the claims. But if we're talking about the facts, we have to remember that we have a very incomplete factual records. This motion was brought in the infancy of discovery. And if there is any facts that matter, then we're talking about parole evidence, and that would mean that there's an ambiguity. If there's two reasonable interpretations, at a minimum, our interpretation is certainly a reasonable one. So if the government's interpretation that they somehow acquired a right to sue itself, and that's really what they're talking about here, that they somehow acquired the claim, meaning a right to sue themselves. If that's a reasonable interpretation somehow, then we have two reasonable interpretations at a minimum, which would mean a latent ambiguity, and in turn, application of the rule of contra profferentum. Thank you. I'll give you two minutes for rebuttal, even though you pretty much used it all up. Thank you. May it please the court, there's no ambiguity here. This is a broad release in this offer to convey security, and it encompasses all contract rights held by partnerships. Well, there is no statement of release. The word release appears nowhere. There's no waiver. There's nothing of that sort. That's correct, Your Honor, and that's consistent with what the parties were attempting to accomplish here, which was moving everything about these properties from the partnerships back to the government. But if intent is relevant, why are we deciding this on a motion to dismiss? Why aren't we sending this back for determinations with respect to intent? Well, I apologize, Your Honor. The trial court concluded correctly that this is a plain language situation. They were not necessarily going to the intent of the parties. Intent is always relevant to contractual determination. You argued that the circumstances say that they impliedly did this, and the court referenced that. So clearly, you didn't think this was a plain language case. No, I apologize if that's the impression that's been given, but I don't think that's true, Your Honor. I think that the language of the offer to convey is clear, and that it says all contract rights, and that means all contract rights. It says all contract rights in security instruments, and there's only one security instrument here. Correct, but that security instrument, as we argue in our briefs, is part of a larger total contract among the parties that encompasses the loan agreement, the promissory note, and the mortgage. Why didn't you just draft it that way? It could have been drafted that way, Your Honor. It's true, but it was not necessary because it here is clear. It does encompass everything. All of the documents that relate to, that were signed on or about the time of the offer to convey security, they all have to do with either conveying the property or extinguishing the loan. There's nothing that I saw that suggested that there was any interest, concern, waiver, release, or anything of that sort with respect to any sort of an accrued cause of action. No, I don't think that the record shows that there's any discussion of the accrued cause of action. I mean, I see nothing that suggests or implies that anybody was even thinking about conveying an implied cause of action. I think that that's probably correct, Your Honor. At least the record doesn't show that. But the point is that there was an intent to – it's not necessary that – and this is Dominion Resources – it's not necessary that there be a specific reference to the accrued cause of action for it to be signed over. Rather, the point is that all contract rights were intended to be moved, and that's clear from the language of the conveyance, and that encompasses any accrued claim for breach. It's true that it could have been dealt with specifically. We don't disagree with that point, but it wasn't. Everything was moved over, and that's, as we said, part of the plain language interpretation by the court, and it's backed up by the contemporary circumstances, which, as I've pointed out and you've noted, demonstrate the partnership's interest in moving these properties out of their hands. And so it's not – the larger umbrella of all contract rights is sufficient to include any accrued claim for breach. And so – and that's demonstrated, I think, in part by the foundational documents, the note, the loan agreement, and the mortgage, which are referential to each other. Obviously, as the court pointed out, the mortgage express incorporates the loan agreement. The promissory note describes itself as part of a total contract of the parties. But clearly, you have to concede there – because there was no express transfer of their accrued rights, then you're relying on a theory of implied transfer. I mean, because even Dominion says it's got to either be express or implied. I suppose that's right, Your Honor. I mean, I guess it depends on what's implied. I don't think Dominion or Ginsberg or the other cases I'm familiar with really parse out what express or imply would mean in this context. The point is that the argument we're making, which I think is consistent – I think the argument was that all contract rights is expressed, but it means everything to do with these three documents and the property at issue here. And they wanted to get rid of it and get rid of all their obligations, so they gave it over to you. Precisely, Your Honor. Yes, that is expressed, and that's sufficient. One thing I wanted to point out with respect to Ginsberg, which I mentioned a moment ago, that that case is very different for reasons of the contractual language I think has already been covered. Also, I'll point out that on the facts in that case, the SIGNOR had already filed a certified claim with the government the day before it signed its assignment. So that emphasizes the importance of the temporal scope of the assignment in that case. It makes it very different from this case. But again, you're talking about parole evidence as opposed to the documents on their face. And the document, as Judge Lin pointed out, the documents on his face only refer to the contract rights in the security instrument. They don't even mention the mortgage, right? They do mention the mortgage. I'm sorry, the offer to convey specifically references the security instrument. And our argument is that the security instrument is part of a larger loan obligation. Right, but the offer to convey only references, on its face, only references the security instrument, right? Yes, because it, well, it does because more generally if you read the entire agreement, it talks about conveying over the property and the loan being forgiven. So that's demonstrated by different foundational, of the foundational documents. I mean, the loan is not set forth in the, the amount of the loan is not set forth in the mortgage. It's, the promissory note is referenced in the mortgage, which then the promissory note sets forth the terms of the loan and contains the prepayment right. So I think it is true that there's a, you do need to read them together as we contend the trial court correctly did, to understand the total relationship of the parties that was seeking to be terminated. Let me ask the same question I asked your adversary. In the offer that conveys security, the language is conveying all right title and interests and the contract rights described in security instruments. What documents do you believe are referred to by security instruments? I think I agree with my friend that security instruments in this instance is the mortgage. Just the mortgage? Yes. Not the loan agreement, not the promissory note. Correct. I would say, and I think this is consistent with his argument, that the loan agreement is the initiating document. They were all executed on the same date, but for conceptual purposes. Loan agreement is initiating document. It contains an agreement that the partnerships will, one, sign a promissory note in exchange for receiving a loan, and two, will sign a mortgage that secures that loan. But even if all three of those documents that were executed at the same time to start this whole transaction are deemed to be interrelated and part of one transaction, that doesn't necessarily mean that the document here in question called offer to convey security, which refers specifically only to one of those documents, conveys expressly an accrued cause of action relating to a different document. I think I would disagree slightly, Your Honor, with the formulation, which is to say it's not that they form a single transaction. I think that's a little bit different from what we're saying. It forms a single contract. It is a single contractual relationship. But you just told me a minute ago that the offer to convey security only referred to one of the three documents in what you're now referring to as a single contract. In that clause, it only refers to the security, as described in security insurance held by or insured by the agency. That's right. I agree with that. And obviously, that's what I've just said. But it also then, well, first of all, as a formal matter, the promissory note is listed in the mortgage itself. So it connects in that sense. And then if you look at the loan agreement and the other documents, it's not possible to disentangle them because of the interlocking rights that the three documents create. Can I ask you this? If your friend's theory is right, that all that was conveyed was the stuff with the mortgage and not the rights associated with the promissory note, wouldn't they still have the right to prepay? Isn't that in the promissory note? Yes. Yes. And if it didn't extinguish the promissory note, well, yes, they would, in theory, still have the right to prepay. They're turning over the property. Right. And so that's in full satisfaction of debt. So that extinguishes the promissory note, which then has the effect of releasing the mortgage. So I think that answers your question by pointing out that one purpose, even though it is described as a security instrument in this subpart 4, the effect of this overall offer to convey and the acceptance is to extinguish the promissory note and thereby release the security on the mortgage, which is the mortgage. But that still leaves us neither here nor there with respect to whatever accrued cause of action there might have been for the breach, the alleged breach that occurred prior to this offer to convey. Well, no, Your Honor. That accrued claim is subsumed within the larger assignment. As you read the language. Yes. That is our interpretation of the language is that all contract rights means all contract rights. And as Dominion Resources says, one of the rights of a party to a contract is the right to sue for breach. And Dominion also makes the point that there's a distinction between the assignment of a contract itself and the assignment of contract rights. And the court in Dominion does that for purposes of distinguishing the Assignment of Claims Act from the Assignment of Contract Act. So it's a little bit different. But there's a difference there and there's an importance to this term, all contract rights. It means something more than just going forward. It means that it's all the rights that the party had under the contract are now extinguished. All right. Before you sit down, I want to talk about the takings claim because I don't understand how your argument is consistent with our decision in Chancellor Manor or even in Sienga 4. The fact that there may have been a contract right does not take away the Fifth Amendment right, does it? Chancellor Manor was pretty specific on that. Well, I think as we read Pazell and obviously as we discuss in our brief, the point there is that if the party retains the rights of super breach of contract, then a contract claim is the appropriate vehicle. That's our reading of Pazell. That case was predated that Chancellor Manor and Sienga 4. Chancellor Manor made it clear that a regulatory takings claim could still be asserted based on the value of the rights in the property itself separate apart from anything that was contracted with the government. The issue here though, Your Honor, is that all of plaintiff's damages, alleged damages, spring from their contract. So they did not articulate below and haven't articulated in the briefs here, any damages that are separate from this alleged breach of the prepayment right. Now they call out their right of use of the properties, but they've never distinguished how that right of use is any different from the prepayment right. What they allege, their whole point in the breach claim is that they were denied the ability to prepay and put these properties on the market. The ability to prepay is a contractual right. We said in Chancellor Manor that where the appellant's claim is based on the fact that they agreed to be subject to a temporal moratorium on their right to exclusive possession and then we have a statute that takes that right away that just because there was a separate contractual agreement with respect to a loan obligation doesn't take away the takings claim. Well, Your Honor, I mean, I fall back on Pazell on the language there and I understand what you're saying. Okay. No further questions? Thank you. Just a few follow-up points and rebuttal, Your Honors. Regarding the contract language, what I was trying to describe earlier, I just want to clarify when we're trying to figure out what are rights in contract rights described in the mortgage. It really is an odd phrase, but there are actually rights, contract rights described in the mortgage. Contracts with third parties and what I'm referring to there is if you look at Appendix 36 right under the property description, there is a long list of rights and interests including rights in contracts that go along with that with the mortgage, i.e. the security instrument and it very closely mirrors the different long list of the 11 types of interests that are being referred to in the offer to convey security. So that's clearly what they're talking about there, not other rights in other contracts that may have been signed at the same time but were separate agreements not being referred to. There's also, I think it's worthy of noting, there's a reference to insurance claims in Part 4.1 of the offer to convey security, so the parties did know how to refer to a claim if that's what they were trying to get because there's a reference to insurance claims. As far as the facts go, the government clearly does rely on the facts that shows it's not, in their view, simply a plain language case and, therefore, if there is a dispute as to the facts at a minimum, we need to finish discovery in this case. There's a lot left to do. You need to wrap up, Your Honor. Yes, finally, Your Honor, regarding the case law. 20 seconds. Yes, I see that, Your Honor. Regarding the case law, I think it's important to remember from all of these cases that in every case where an assignment of a claim was found to have occurred, the parties, the assignor and the assignee agreed there was no dispute that they were assigning that claim. Here, there is simply no evidence that Mr. Rupp intended to give up this valuable claim. Thank you, Your Honors. So your request really would be that we would remand for purposes of further development of the record? That would be an alternative argument. We do think the language of the agreement is clear, that there's simply no reference to claims. You need some kind of a designation of claims. It's clearly not there, so we would reverse on that ground. Alternatively, if the court does agree with the government that the facts matter, then we need to find out what the facts are. So that would be an alternative position. Thank you. The case will be submitted.